[Civ. No. 556.   Third Appellate District.—February 4, 1909.]

## JOHN C. BRICKELL, Appellant, v. THE ATLAS ASSURANCE COMPANY, LIMITED, etc., Respondent.

Fire Insurance—Sale and Purchase of Insured Property without Consent of Insurer—Policy Vitiated.—Under a policy of fire insurance providing that the policy shall be void, unless otherwise provided by indorsement thereon, if any change takes place in the interest, title or possession of the subject of insurance, a contract for the sale and purchase of the insured premises, transferring possession to the purchaser under fixed terms of payment, without any indorsement on the policy or consent of the insurer, vitiates the policy, and no recovery can be had thereon in the event of loss by fire.

Id.—Distinction Between Contract of Sale and Option—Question of Obligation.—The distinction between a contract to sell and purchase real estate and an option to purchase is that the former creates a mutual obligation on the one party to sell and on the other to purchase, while the latter merely gives the right to purchase, within a limited time, without imposing any obligation to purchase.

Id.—Terms of Contract of Sale and Purchase—Cash Payment—Possession — Beneficial Ownership — Re-entry for Breach.—Where the price fixed by contract for the sale of the insured premises

10 Cal. App.—2

was $10,000, on which the purchaser paid $3,000 in cash when he took possession thereof, and obligated himself to pay the residue in monthly installments by a fixed time, the $3,000 cannot be deemed the price of an option, but the possession taken by the purchaser under the terms of the contract made him the equitable or beneficial owner of the premises; and the mere fact that, in case of breach of the contract, it was stipulated that the vendor might re-enter, and treat all payments made as compensation for use of the premises, does not make the contract an option or render it any the less a contract for the sale and purchase of the premises insured.

ID.—FORFEITURE FOR LOSS OF "UNCONDITIONAL AND SOLE OWNERSHIP"— DEFEASIBLE RIGHTS.—When, by the terms of the policy, it was to be forfeited, "if the interest of the insured be other than unconditional and sole ownership," without an agreement by the insurer on the policy, it became manifest that his "unconditional and sole ownership" ceased to exist when an equitable interest in possession was bestowed upon the purchaser under the contract of sale and purchase. In such case neither the vendor nor vendee had an absolute title; but the equitable title of the purchaser, as such, was as absolute as the legal title of the vendor as such. Both of these titles were defeasible—that of the purchaser by the forfeiture prescribed in the agreement of sale and purchase, for nonperformance of its conditions, and that of the vendor, upon full performance of those conditions by the purchaser, thereby divesting the vendor of all ownership of the property.

ID.—POLICY OF INSURANCE A PERSONAL CONTRACT—BREACH OF CONDITIONS.—A policy of insurance is a personal contract between the insurer and the insured, and is subject to all express conditions inserted therein; and a breach of such conditions against any voluntary change in the interest, title or possession of the insured premises, not agreed to by the insurer on the policy, divested, *ipso facto*, the insured of all insurable interest in the insured premises, and renders the contract void.

ID.—"CHANGE OF INTEREST" IN PROPERTY INSURED.—A "change of interest" in the property insured, without consent of the insurer, is as effectual to defeat the policy as a "change of title." The word "interest" is broader and more comprehensive than the word "title," and embraces both legal and equitable rights. The doctrine that there is no breach of condition against "change of title," so long as the insured retains the title, cannot be applied to the condition against a "change of interest." The true test is whether the insured, as a vendor, has parted with the absolute control and dominion over the property insured to a purchaser. If he has, a "change of interest" has been effected, which if not sanctioned by the insurer makes the policy void.

ID.—"CHANGE OF POSSESSION."—The "change of possession" which vitiates the policy is made when possession is given, not merely to a

tenant of the insured, whose possession is constructively his, but to a purchaser to whom a right of possession is given as against the insured as a vendor, so long as the terms of purchase are complied with.

ID.—INCREASE OF RISK IMMATERIAL.—It is immaterial whether there was or was not an increase of risk by delivery of possession under a contract of sale to a purchaser. That question is only material when possession is held by a tenant of the insured.

ID.—PRESUMPTION FROM PERSONAL CHARACTER OF INSURED PARTY—PROTECTION OF POLICY-HOLDERS AGAINST TRANSFER TO UNKNOWN PARTY.—It must be assumed that the personal character of the insured party was an important factor in moving the insurance company to assume the risk; and it owed a duty to other policy-holders to fortify itself against assuming any other hazard in favor of another party unknown to the insurer, and to require its consent to any change in the interest, title or possession of the insured premises.

ID.—RIGHTS OF INSURANCE COMPANY.—The insurance company is entitled to a substantial compliance on the part of the insured with the terms of the contract of insurance.

ID.—RULE OF CONSTRUCTION IN FAVOR OF ASSURED—LIMITS OF APPLICATION.—The rule of construction of an insurance policy in favor of the insured only applies to resolve an uncertainty or ambiguity therein in his favor, and cannot be invoked to nullify his express and unequivocal agreement, or to change the nature and express conditions of the policy.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Frank J. Murasky, Judge.

The facts are stated in the opinion of the court.

J. C. Bates, and Myer Jacobs, for Appellant.

W. C. Sharpstein, for Respondent.

HART, J.—The object of this action is to recover the sum of $5,000 on a policy of insurance for the loss by fire of a two-story frame building, situated in the city of San Francisco, said building, it is alleged, being the property of plaintiff.

The court sustained the defendant's demurrer to the amended complaint, and the plaintiff declining to further amend the same, judgment was entered dismissing the action.

From said judgment this appeal is taken.

According to the averments of the complaint, the respondent, on the twentieth day of September, 1905, issued to the appellant a policy of fire insurance for $5,000, covering the two-story frame building mentioned for a term of three years from September 19, 1905. It further appears from the complaint that on the twenty-eighth day of September, 1905, the appellant entered into a contract in writing with one L. A. Phillips, by the terms of which the former agreed to sell and convey to the latter and Phillips agreed to buy the premises upon which the policy of insurance herein involved was issued for the sum of $10,000, of which payments were conditioned in said agreement to be made as follows: Three thousand dollars upon the ''execution and delivery of this agreement, the receipt whereof is hereby acknowledged, and at least $250 on the first day of November, 1905, and $250 on the first day of each month thereafter,'' with interest on the unpaid portion of the principal at the rate of six per cent per annum, to be likewise paid on the first day of each month. It was further agreed by the party of the second part (Phillips) that he would pay the whole of said purchase price and interest on or before the first day of November, 1906. The party of the second part further agreed to pay all the taxes assessed against the premises and to keep the improvements insured on the premises against loss by fire, in the sum of $5,000, the loss, if any, to be paid to the first party. The agreement provides that, in the event the second party defaults in any of the conditions or covenants contained therein, the appellant has the option to re-enter and take possession of the premises and terminate the agreement, upon the happening of which contingency he was to retain the part of the purchase price already paid as compensation for occupation and use of the premises, or he was at liberty to bring an action to enforce payment of the remainder of the purchase price, or to foreclose the interest of Phillips. Under this agreement Phillips entered into possession of the premises about October 1, 1905, and retained such possession until the memorable nineteenth day of April, 1906, when the building was destroyed by fire.

The policy or contract of insurance declared upon is set forth in the complaint *in haec verba.* The following conditions are contained in said policy: ''This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto shall be void . . . if the interest of the assured

be other than unconditional and sole ownership . . . ; or if any change other than by the death of the insured take place in the interest, title or possession of the subject of insurance (except change of occupants without increase of hazard) whether by legal process or judgment or by voluntary act of the insured or otherwise.''

It will be observed that the appellant entered into the agreement to sell the premises to Phillips, and gave the latter full and exclusive possession of the same under said agreement within less than a month after the policy of insurance was issued to him by the respondent.

There is nothing in the averments of the complaint showing that the defendant assented to the agreement of sale or to Phillips' possession and occupancy of the premises, or had any knowledge of the transaction.

The claim of the defendant is that, as the policy of insurance contains provisions that if any change should take place in the interest in the subject of insurance by the voluntary act of the insured, or any change effected in the title to the subject of insurance by the voluntary act of the insured, or if any change should occur in the possession of the subject of the insurance, then, in either event, the policy becomes void, and that such changes having taken place, the plaintiff cannot recover.

*Per contra*, the plaintiff contends and undertakes to show that there has been neither change of interest, nor of title or possession. In support of this position, counsel for appellant argue —1. That the agreement between the plaintiff and Phillips amounts to nothing more than an option by which the latter is given the right to buy the premises within a certain specified time, and that, therefore, the plaintiff was not thereby divested of the legal or any title; that, in any event, Phillips acquired only an equitable interest, and that, in order to render the contract of insurance void by reason of change of title, the insured must part with more than a mere equitable estate in the subject of the insurance; 2. That, assuming this to be the correct view, the possession of the premises by Phillips was the plaintiff's possession; and 3. That the plaintiff, notwithstanding the agreement with Phillips, still retained an insurable interest in the property, and that before the policy can be avoided for this reason, the whole interest

of the insured must have passed. The last-mentioned proposition is, practically, involved in the two previously stated.

The demurrer was properly sustained. We have no doubt that the agreement entered into by the plaintiff and Phillips constituted a contract of sale and purchase, and not an option.

"The distinction between a contract to purchase or sell real estate and an option to purchase is that the contract to purchase or sell creates a mutual obligation on the one party to sell and on the other to purchase, while an option merely gives the right to purchase within a limited time without imposing any obligation to purchase." (29 Am. & Eng. Ency. of Law, 2d ed., 606; *Menzel* v. *Primm,* 6 Cal. App. 204, [91 Pac. 756].) In other words, an option is a right "acquired by contract to accept or reject a present offer within a limited or reasonable time in the future." (21 Am. & Eng. Ency. of Law, 924.)

There is no ambiguity or obscurity in the language of the agreement between the plaintiff and Phillips, and its meaning cannot be misunderstood. By its terms, the plaintiff agreed to sell and Phillips agreed to buy the premises for the sum of $10,000, of which the latter, upon taking possession, paid the sum of $3,000. It is stipulated therein that the balance shall be paid, in monthly installments, by the 1st of November of the year following that of its execution, and in case of default in the payments so stipulated, or for the violation of certain other of its vital covenants, the plaintiff could re-enter and resume possession, or enforce payment of the balance due, etc. The test, in determining whether it was a contract of sale and purchase or a mere option, is, Could the agreement be specifically enforced? It is, of course, unnecessary to suggest that no one will for a moment question the proposition that had Phillips completed the payment of the balance due under the agreement he could have enforced the execution of a deed to the premises, and *e converso,* if the plaintiff had so elected, he could have enforced a performance of the agreement by Phillips. The fact that the agreement contains a provision authorizing the plaintiff, upon default by Phillips to comply with the conditions of the sale and purchase, to re-enter and take possession and treat as compensation for occupation and use of the premises all payments already made, does not make the agreement any the less a

contract of sale and purchase. If it were only an option, no obligation rested on Phillips to make any payment, except such as might be agreed upon between the parties as a consideration to support such option, until he had made up his mind, within the time specified, to exercise his right of option. And, it may be added, that if, in the first instance, or originally, the parties intended that the agreement should operate as an option only, the moment Phillips made the payment of $3,000 on the principal sum agreed as the consideration for the sale of the property and took possession, the agreement ceased to be an option, for the payment of said sum and the act of taking possession could not reasonably be construed as anything other than the actual exercise of the right to purchase, unless it could be said that the $3,000 payment was intended only as a consideration for the support of the option or the right to purchase, a proposition which would, manifestly, be absurd, for it is not reasonable to assume that one would pay the sum of $3,000 as a consideration for the right to buy property valued at $10,000, or at least offered for sale at that sum.

It is clear that, by virtue of the terms of said agreement and its execution to the extent of transferring possession to Phillips, upon his payment of the $3,000 stipulated therein, a change of possession was effected, and that Phillips became at least the equitable or beneficial owner of the premises. The plaintiff could have enforced the performance of the agreement or recovered for the breach of its terms, notwithstanding the destruction of the building. The covenant by which the vendee obligated himself to maintain insurance upon the property, the same to be paid, in case of loss, to the vendor, was a part of the consideration of the agreement of sale, the effect of which was, merely, to provide the latter with additional security for the unpaid balance of the purchase price. The vendor, therefore, by the transaction lost all "insurable interest" in the property, by which it is to be understood that he had parted with all such dominion over and ownership of the premises as to render the contract of insurance between himself and the defendant of no further personal interest to him than that of a mere creditor, or as if he were no more than a mortgagee of the premises, and the insurance on the same, maintained, by the terms of the agreement,

at the expense of the mortgagor, were made payable to him as an additional security for the mortgage debt. In short, it may be said that the plaintiff, in the contract of sale, in addition to the rights given him by the law, either to enforce the specific performance of the terms of the agreement or to sue for damages for the violation of its covenants, expressly reserved to himself the further right, if he desired to exercise it in preference to resorting to the equitable or legal remedy mentioned, to re-enter and resume possession, treating payments already made as compensation for the use of the premises, and also the right to collect and receive for himself the insurance, or so much thereof as would liquidate the balance of the indebtedness, in the event of loss by fire before the full payment of the purchase price had been completed.

It necessarily follows, from the construction we have given the effect of the agreement between the plaintiff and Phillips, that there can be no merit in the argument, upon the question of the change of title, that, in order to divest the vendor of all insurable interest in the property insured, both the legal and the equitable title to the premises must have joined or been vested in the vendee. Neither the vendor nor vendee had an absolute title; but the equitable title as such of the vendee was as absolute as the legal title as such of the vendor, both being defeasible—the one by the forfeiture prescribed in the agreement for the nonperformance of the conditions therein specified, the other by the full performance of said conditions. In other words, plaintiff's interest in the insured property was not, to use the language of the policy itself, that "of unconditional and sole ownership."

Obviously, the policy of insurance upon which recovery is here sought constituted a personal contract between the defendant and the plaintiff, and the change of title to and possession of the subject of insurance, without the knowledge or consent of the insurer, divested, *ipso facto,* the plaintiff of all insurable interest in the insured premises, thus vitiating the contract and rendering it void. (*Brighton Beach etc. Assn.* v. *Home etc. Co.,* 113 App. Div. 728, [99 N. Y. Supp. 219], affirmed by the court of appeals, 189 N. Y. 30, [82 N. E. 1124].) In that case the policy of insurance, as to the conditions with regard to a change of title, possession and interest, contained a clause similar to that embraced in the policy here,

and in discussing the question of the effect of change of title to, possession of and interest in the subject of the insurance, the court uses language so pertinent to the case at bar that we quote from the opinion *in extenso:*

"The decisions of courts of sister states unite in the proposition that one in possession of real property under a valid contract of purchase is the sole and unconditional owner thereof subject only to the enforcement of payment of the price agreed upon by the holders of the legal title; while the courts of this state have held such a vendee to be the equitable owner of the premises, vendible as his, chargeable as his, capable of being encumbered as his. They may be devised as his. They may be assets. They would descend to his heir, and while he was living be insurable as his. It can hardly be maintained that there can be two sole and unconditional owners of the same property, or two owners legally entitled to exercise the same sole and exclusive rights therein at the same time, and it is clear that such a change of title was effected by possession given the appellant under the contract of sale as to have avoided the policy of insurance.

"Again, it appears beyond reasonable contention that a change in the 'interest' and 'possession' of Dunne in the insured property accomplished the same legal result. The word 'interest' is broader and more comprehensive than the word 'title.' It embraces both legal and equitable rights. The doctrine contended for by appellant that when the condition is against a change in the 'title' there is no breach unless there is a change in the legal title, and that as long as the insured retains the legal title, the policy is not avoided by a transfer of the equitable title, cannot be applied to a condition against a change of 'interest.' The terms are not synonymous. The true test is whether the vendor has parted with the absolute control and dominion over the property insured. If he has, a change in 'interest' has been effected and the policy is void. I am of the opinion also that there was a change in 'possession' within the meaning of that word as used in the policy. While it is true that the agreement designates the occupancy of the vendee as that of a tenant of the vendor without pay or rent, it is apparent that the contract gave and secured to him more than the rights and interest of a tenant. He was charged with the liabilities of and entitled

to enforce the rights of a purchaser in possession and could not be ejected as a tenant regardless of such rights. The possession of the vendee was absolute and exclusive of the vendor so long as he has performed his contract. All the rights of possession of the insured property held and exercised solely and exclusively by Dunne when he obtained the policy of insurance he divested himself of by executing the contract and giving plaintiff possession under it. From the time such possession was taken by plaintiff, Dunne had no possession or right of possession, while the former performed the contract provisions, and the attempted characterization in the contract of the occupancy of the vendee as that of a tenant did not take from plaintiff its legal rights thereunder as the equitable owner in possession or having the legal effect of reserving to Dunne the sole and exclusive possession he owned and exercised when the contract of insurance was made with the respondent.

"It may also be observed that by the policy of insurance, which was a personal contract, the respondent undertook to indemnify Dunne against loss or damage by fire to his buildings as long as his ownership, interest and possession thereof remained exactly the same as they then were and no longer. This obligation cannot be extended beyond a time when Dunne voluntarily gave such right of possession to the appellant and changed his interest and the nature of his title in and to the insured property without the consent of the respondent, who never undertook to insure the buildings for the benefit of the appellant.

"It follows that the right to enforce the policy of insurance terminated with the execution of the contract and the surrender of possession of the insured buildings without the knowledge or consent of the respondent."

See, also, *Manning* v. *North British etc. Co.*, 132 Mo. App. 456, [99 S. W. 1095], a rehearing having been denied by the supreme court; *Grunauer* v. *Westchester etc. Co.*, 72 N. J. L. 289, [62 Atl. 418]; *Gibb* v. *Philadelphia etc. Co.*, 59 Minn. 267, [50 Am. St. Rep. 405, 61 N. W. 137]; *Skinner etc. Co.* v. *Houghton*, 92 Md. 68, [84 Am. St. Rep. 485, 48 Atl. 85]; *Vancouver Bank* v. *Law etc. Co.*, 153 Fed. 440; *Finkbohner* v. *Glenns Falls etc. Co.*, 6 Cal. App. 379, [92 Pac. 318].

In the last-mentioned case an executory agreement of sale of the insured property, similar in all essential particulars to the one here, was entered into by the owner of the property and two other parties, possession being given under said agreement to the vendees. The agreement contained, among other conditions, a provision that the latter would pay all taxes assessed against said property. The change of possession under the agreement was without the knowledge or consent of the appellant. This court, speaking through Justice Burnett, uses the following language, which involves a conclusive reply to counsel for the appellant in the case at bar upon the point he attempts to maintain that whether there was any increase of hazard by reason of the change of possession is a question which can be determined only by the evidence and that, therefore, the mere change of possession or title, etc., does not raise a presumption of increase of risk; "It is of no importance that the learned trial judge found that there was no increase of the risk from the change of possession. It is obvious that such a finding is material only where possession is held by a tenant of the insured. Assuming, as a matter of fact, that Martin is just as careful and conscientious as Finkbohner and that the danger of fire was actually not increased in consequence of Martin's possession of the property, yet the law applies a general standard to all similar cases, and constrains us to hold that the insured, having lost his pecuniary interest in the protection of the property, the risk was thereby increased, and under the express terms of the policy the insurer is relieved of liability. To hold otherwise would be for us to declare that the parties are not to be bound by the terms of their agreement. This is not within the province of a judicial tribunal. The insured should have secured the consent of the insurer to the change of title, as provided in the policy. He made no attempt to do so, and we are powerless to relieve him of the consequences of his neglect."

The case of *Smith* v. *Phoenix Ins. Co.,* 91 Cal. 323, [25 Am. St. Rep. 191, 27 Pac. 738], cited and relied upon by the appellant, is not in point here for the reason that the facts therein are materially different from those in the case at bar. In that case the contract under which Stewart, the party to whom it was contended the property was sold, took possession

of the premises, was a lease, pure and simple. There was, it is true, a provision in the instrument following that demising the property to said Stewart for the term of five years, at a stipulated rent, payable monthly, to the effect that "said party of the second part *may at any time* during said term of five years purchase said hotel," etc. But, speaking of the latter clause, the supreme court has this to say: "In considering the question before us, we may lay out of view the stipulation giving Stewart the privilege of purchasing, for clearly he was not thereby bound to take the property and pay for it, even if it remained whole and intact." The possession of Stewart was, obviously, only that of a tenant. It was also held in that case that the possession of the property by Stewart was with the implied consent of the insurer.

The numerous other authorities submitted by appellant in support of his several contentions may, without difficulty, be distinguished from the case at bar. But there is no reason upon principle why this judgment should not be sustained. The contract which the plaintiff made with the defendant was, as before observed, a personal one. It must be assumed that the personal character of a party whose property has been insured and its owner thus, at least in part, indemnified against loss, is an important factor in moving an insurance company to assume the risk. In any event, the company has the right—in fact, it is a duty it owes to its other policy holders—to fortify itself through its agreement against assuming an improvident hazard, or any risk under such circumstances as would make the hazard an improvident one. The insurance company is entitled to a substantial compliance, on the part of the insured, with the terms of the contract of insurance. It is well said in *Finkbohner* v. *Glenns Falls Ins. Co.*, 6 Cal. App. 379, [92 Pac. 318] : "In the construction of insurance policies great favor is shown to the insured. The rule generally recognized is to construe the covenants strictly against the insurer and liberally in favor of the insured. We need not stop to philosophize as to the reason for this rule. It is sufficient, to say that it has been generally indorsed by the higher courts, but, of course, it is not sufficiently indulgent toward the insured as to ignore or nullify his express and unequivocal agreement. It cannot be invoked to change the nature of the contract, but only to resolve an

uncertainty or ambiguity in favor of the party who is likely to be misinformed or imposed upon."

For the reasons set forth herein, the judgment appealed from is affirmed.

Chipman, P. J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 5, 1909.