[Civ. No. 3528. Second Appellate District, Division Two.—May 24, 1921.]

## LOS ANGELES COUNTY FLOOD CONTROL DISTRICT, etc., Respondent, v. DORSEY G. ANDREWS et al., Defendants; HARBOR LUMBER COMPANY (a Corporation), Appellant.

[1] OPTION—PURCHASE OF REAL PROPERTY—SIGNING OF STATEMENT OF ACCEPTANCE—EFFECT OF.—An option to purchase real property is not to be construed as a contract between the parties giving the optionee an equitable interest in the property by reason of the mere fact that it signed a statement appended to the option reciting an acceptance, where both instruments were signed on the same day and under the terms of the option the optionee was not obligated to do anything.

[2] EMINENT DOMAIN—INTEREST OF OPTIONEE—NOMINAL VALUE—EFFECT OF.—Where, in a condemnation proceeding, it is found that the interest of an optionee in the property is of nominal value, it is concluded by the judgment.

[3] ID.—DAMAGES—LEASEHOLD INTEREST—REMOVAL OF STRUCTURES.—The rule that damages are to be assessed in condemnation cases as of the date of the issuance of the summons relates only to property actually taken, and is not applicable to a leasehold interest not taken, but which the lessee held unmolested until the end of the term nor to damages for the removal of structures which the lessee was required to remove during the term or lose altogether.

APPEAL from a judgment of the Superior Court of Los Angeles County. Paul J. McCormick, Judge. Affirmed.

The facts are stated in the opinion of the court.

R. L. Horton for Appellant.

A. J. Hill, Vincent Morgan and Wm. W. Clary for Respondent.

WORKS, J.—This is an action for the condemnation of real property under the right of eminent domain. Plaintiff had judgment and defendant Harbor Lumber Company appeals.

On May 27, 1916, The Long Beach Savings & Trust Company entered into a writing with Clark Horsford, the trust company being the owner of the property sought to be con-

demned and in which appellant claims an interest, and Horsford acting as the agent of appellant. On account of Horsford's peculiar manner of executing the document, which appears below, it is to be remarked that both parties signed it the same day. The instrument, in its material parts, after the heading "Offer to Sell and Option," follows:

"The Long Beach Savings & Trust Company, a corporation, party of the first part—and—Clark Horsford of Los Angeles, party of the second part, witnesseth:

"That first party holds title . . . to the lands herein described and said second party has a wish to become the owner of the same, at some future time:

"Therefore, it is agreed as follows and this offer is made to second party by way of an option and not otherwise and it is especially agreed that time is of the essence of this agreement.

"First party will sell and deliver a grant deed with a certificate of title to the same showing the ability to convey a good title to the property, subject to the taxes for the fiscal year the option is taken up and which buyer assumes. And subject . . .

"Buyer also agrees to assume any liability or liens for any hereafter public improvements assessed against said property, . . .

"The purchase price for the property is agreed upon at $45,000. . . .

"The first party gives second party and his assigns a three (3) year option from date hereof to take it up and perform this agreement.

"Buyer to pay in cash at time of going into escrow to perform this agreement to close, the sum of $15,000 and the remainder to be paid under this option is to be paid in equal sums in one and two years thereafter, secured by the usual form of mortgage. . . . And said deferred payments are to bear interest at the rate of 7% per year. . . .

"This agreement is subject to a certain lease between the parties hereto. And if this option is taken up lessee named in this lease will surrender the same and it becomes cancelled.

"Buyer is to pay the cost of bringing down certificate of title it to show mortgagee's mortgage to be a first lien, . . .

"And each party takes the property subject to recorded liens as are usually assumed by parties dealing with such property, . . .

"The lands are known as follows": [Here follows a description of the lands sought to be condemned.]

"In witness whereof said Long Beach Savings Bank & Trust Co. has caused its corporate name to be hereunto subscribed by its proper officers. . . .

" (Signed)    LONG BEACH SAVINGS BANK & TRUST CO.
                        "By J. W. TUCKER, Secretary.

"I, said Clark Horsford do hereby accept the option above written together with its conditions.
                        " (Signed)    CLARK HORSFORD."

On June 1, 1916, appellant took from the trust company a lease for three years on the property described in the above instrument, and was thereafter in possession of the premises under the lease.

In December, 1918, respondent purchased from the trust company the property described in the two instruments, appellant still being in possession of the premises under the lease. The appellant was not molested in its possession by reason of the purchase by respondent, but thereafter it paid to respondent the monthly rent reserved in the lease.

The complaint in this action was filed March 20, 1919, and summons was thereupon issued. The pleading alleges that appellant claims some interest in or lien upon the property, but that it has no valid or legal interest in or claim to or lien upon it. Appellant, in response, set up the instrument from which quotation is above made, terming it an option, and also pleaded the lease. It also claimed damages for certain structures it had placed on the land, under allegations that they could not be removed without being destroyed.

The trial of the action was commenced on July 24, 1919. Meanwhile, on June 1, 1919, the term under the lease had ended, appellant having continued, during the term, to pay the monthly rentals to respondent. Also, appellant held

over until during the trial, as a month to month tenant, continuing to pay the monthly rental to respondent.

The trial court found that the agreement between the trust company and Horsford was but an option; that the option provided that time was of the essence of the agreement; that appellant did not exercise the option; that it did not within three years, or at all, accept the option, or offer the purchase price according to the terms of the option; that appellant had no right, title, or interest in the property; that, on March 20, 1919, the date of the issuance of summons, the property was worth less than forty-five thousand dollars, the purchase price fixed by the option agreement; that appellant was not entitled to damages for expenses of removal of its structures from the land or for expenses of relocation; and that the option had not, on March 20, 1919, any market value.

[1] Appellant contends that at the time of the issuance of summons, that being the time as to which values in condemnation cases are to be fixed (Code Civ. Proc., sec. 1249), it was an equitable owner of the land sought to be condemned. This claim is made because of the unusual manner in which Horsford indicated his execution of the option agreement. It is evident from the terms of the instrument that he was to be a signer of it. In the introductory paragraph he is referred to by name as the party of the second part. His name is not found again in the agreement, but the second party is referred to continually. Couched as the instrument was, his signing in the manner in which he did placed him in no different position than if he had merely appended his name after that of the secretary of the trust company. And his being a party to the paper was of no significance whatever. It was purely unilateral, for he made no promises above his signature, he covenanted to do nothing. In short, and without dissection of the instrument, it is plain to be seen that it was nothing but an option; and when an option is signed by the optionee it is not because of that signature to be dignified by a higher name. It does not thereby evidence a contract between the signers (*Menzel* v. *Primm,* 6 Cal. App. 204 [91 Pac. 754]; *Johnson* v. *Clark,* 174 Cal. 582 [163 Pac. 1004]).

Forgetting, for the moment, the construction we have placed on Horsford's act in signing the statement at the bottom of the option agreement, that construction being based upon the fact that he was intended to be the party of the second part to it, there is another view of the situation which concludes appellant's claim that the act amounted to an acceptance of the option. Conceding, which we do not decide, that an option may be accepted, in the sense that a binding obligation is assumed by the optionee, by a statement such as Horsford appended to the instrument now before us, it is certain that the parties intended nothing of the sort in this instance. It is to be remembered that Horsford wrote his contribution to the paper on the same day that the corporation executed it, thus, apparently, making the two acts but parts of one transaction. Under these circumstances, and considering the language employed throughout the option agreement, it is plain that the parties never intended Horsford's signature to operate as an acceptance of the option. The argument on this point is forcefully presented in a series of questions set forth in the brief of counsel for respondent. These questions are, with the italics of counsel: "If it was intended by Horsford . . . that the so-called acceptance . . . was to be deemed a complete and binding acceptance of the offer to purchase [sell] so as to constitute a contract of sale, why did not the parties prepare and sign a contract of sale instead of that which is manifestly a mere offer to sell? Why is it that the instrument is so specifically termed 'An *Offer to Sell and Option*'? Why is it that the 'offer is made to second party by way of an option and not otherwise'? Why is it that the instrument specifies that 'said second party has *a wish to* become the owner of same *at some future time*'? Why is it that reference is made therein to a lease to be surrendered if the option is taken up? Why is it that in the offer it is recited that 'the first party gives second party and his assigns *a three-year option from date hereof to take it up and perform this agreement*' if, as appellant now contends, the signature of Horsford constituted a full and complete acceptance of the option so as to transform it *immediately* into a contract for the sale of the lands?" There is but one answer to these questions, and that answer we have stated in advance of the questions. We conclude

that appellant never had any interest in the property under the option agreement.

[2] Suppose, however, that appellant did acquire an equitable interest in the land under the so-called acceptance of Horsford. There is yet a ground upon which the claims of appellant are concluded. The trial court found that, at the time of the issuance of the summons, the property was worth less than forty-five thousand dollars, the selling price fixed by the option agreement, and the propriety of that finding is not questioned. Under such a finding there could have been, of course, no possible award of damages to appellant for the taking of its interest through the condemnation. If we concede an existence of the interest we must assert that it was but a nominal one, for under the finding of the court it was utterly without value.

[3] Appellant contends, upon the asserted claim that it was in possession of the property under both the option and the lease, that it was entitled to damages for expenses of removal and relocation of its structures and for other items of a like character. The assertion that it held under the option goes for naught after what we have said above; and even if we concede, yet once again, that Horsford's signature amounted to an acceptance of the option, the situation is unchanged, for there is nothing in the option agreement which gave to appellant any right to the possession of the land. Its possession was referable alone to the lease, executed four days after Horsford had appended his signature to the agreement. That being so, appellant was not entitled to damages in the particulars mentioned. Its structures were placed on the land with knowledge of the fact that its leasehold interest was to expire on June 1, 1919, under the terms of the lease itself, and it did so expire. The leasehold interest was not taken nor molested by the decree of condemnation. Appellant contends that its right to the damages in question is established by the fact that its leasehold was interrupted, in contemplation of law, on March 20, 1919, the date when summons was issued; but the rule that damages are to be assessed in condemnation cases as of the date of the issuance of summons relates only to property actually taken. An anomalous and unbearable condition would be presented if, under that rule, the public could be required to pay for a

leasehold interest not taken, but which the lessee held unmolested to the end of the term, or for the cost of the removal of structures which the lessee must have removed before the expiration of the term, or must have lost altogether. Fortunately, such a condition does not exist under the law (*Schreiber* v. *Chicago & E. R. Co.,* 115 Ill. 340 [3 N. E. 427]).

Respondent presents a number of other arguments in opposition to the claims of appellant, but we need pursue the subject no further.

The judgment is affirmed.

Finlayson, P. J., and Craig, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on June 22, 1921, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 21, 1921.

All the Justices concurred, except Wilbur, J., and Lennon, J., who did not participate.