[Civ. No. 13592. First Dist., Div. One. Mar. 8, 1949.]

THE PEOPLE, Plaintiff and Respondent, v. OCEAN SHORE RAILROAD COMPANY (a Corporation) et al., Appellants; LILLIAN A. KROBITZSCH et al., Defendants and Respondents.

Erskine, Erskine & Tulley, Nichols & Richard, A. P. Black, Eli D. Langert and Edwin H. Williams for Appellants.

Holloway Jones, Geo. C. Hadley, Lincoln V. Johnson and Jack M. Howard for Plaintiff and Respondent.

Elliott M. Epsteen and Chas. C. Boynton for Defendants and Respondents.

BRAY, J.—For the reasons hereafter set forth, we adopt as the opinion on this rehearing the opinion previously filed. It reads:

"Appeal by defendants Ocean Shore Railroad Company, a corporation, Harry W. Cole and George Middleton, individually and as surviving partners of that certain partnership known as 'Selah Chamberlain Associates' from a judgment awarding defendants Lillian A. Krobitzsch et al., as executrices of the will of R. W. Krobitzsch, deceased (hereinafter referred to as the Krobitzsch estate), damages in a condemnation action brought by plaintiff. Two condemnation actions were consolidated for trial.

"The controversy arises out of a certain written agreement and two supplements thereof executed between defendant Middleton and Lillian Krobitzsch and her now deceased husband, R. W. Krobitzsch. Defendant Middleton at all times was acting as agent for defendants Ocean Shore Railroad Company, a corporation, and the partnership known as Selah Chamberlain Associates. For brevity Middleton alone will be referred to throughout this opinion. The actions were brought

by plaintiff to condemn land for highway purposes. The Krobitzsch estate on the one hand, and Middleton, on the other, claimed the right to the award of compensation for the parcel of real property in question here, which the court ordered condemned.

"At the trial, the Krobitzsch estate stipulated with plaintiff that the amount which plaintiff should pay for the property condemned was $5,750. Middleton offered to prove that the amount which should be awarded was actually $73,000. The court sustained an objection to this offer on the ground that Middleton had no interest in the property. Obviously, if Middleton has any interest in it, he will be entitled to make his proof. In its findings, the court found that all rights of Middleton under the agreement hereafter discussed had ended and he had no interest in the property.

"On June 6, 1937, R. W. Krobitzsch, the decedent, was the owner of the property. On that date he and his wife, as first parties, entered into a certain agreement, headed 'Option,' with the defendant Middleton as second party. The terms of that agreement and the two supplements thereto, so far as relevant to the questions before us, follow: In consideration of $500 then paid, the 'first parties hereby give to second party the exclusive right and option to purchase on or before July 6, 1937, all of' the property in question 'for the sum of Fifty Thousand ($50,000.00) Dollars, payable as follows: The further sum of $4500. on or before July 6, 1937, and $2500. every six months thereafter until the full purchase price is paid, together with interest at the rate of six per cent per annum on the unpaid balance, interest payable semi-annually. . . .

" '8. When $22,500. shall have been paid on the principal of the purchase price, a commission of five per cent of the total purchase price shall be payable from first parties to second party, without interest.

" '9. In the event of default of any of the payments due hereunder on the dates and in the manner herein provided for, first parties may at their option declare this agreement null and void and of no effect, and shall keep and retain as rental, depreciation and liquidated damages, any and all monies paid under the terms hereof, and provided further first parties shall have no right or claim against second party, except to the retention of such monies so paid, and to declare this agreement null and void as aforesaid. Sixty days notice

of any such default shall be given to second party by registered mail . . .

" '10. Time is of the essence of this agreement and in each and every part thereof.'

"On February 15, 1940, the parties entered into a 'Supplemental Agreement Between R. W. Krobitzsch and Lillian A. Krobitzsch with George E. Middleton.' This referred to the original agreement, and then provided:

" 'Under the option agreement of June 1937, Middleton is in default in payment due July 6, 1939; and further in default of payment due January 6, 1940, plus interest. Under said agreement Krobitzsch has the right to serve notice of default and take advantage of the provisions of paragraph 9.

" 'In consideration of Krobitzsch's forbearance to serve such notice of default and take advantage of the forfeiture provisions of said paragraph 9, and at Middleton's instance and request, this agreement, termed "Supplemental Agreement," is made. The consideration is Krobitzsch's forbearance to take advantage of said provisions of paragraph 9.

" 'On or before February 21, 1940, all current taxes and back taxes on the property described in the June 1937 agreement, together with all penalties due to date, shall be paid by Middleton.

" 'On or before April 5, 1940, all taxes then due on said property shall be paid by Middleton at the place and places where due. . . .

" 'Upon payment by Middleton of all taxes and insurance as above provided on or before the dates particularly specified, then Middleton is granted an extension of 60 days from and after January 6, 1940, in which to make the payments now in default and due July 6, 1939, and January 6, 1940, respectively.

" 'The waiver by Krobitzsch of any breach of any term, covenant or condition herein contained or of the original agreement of June 1939, shall not be deemed to be a waiver of any subsequent breach . . .

" 'Time is of the essence hereof and if Middleton, for any reason, fails to comply with any of the terms, or conditions in this Supplemental Agreement contained, then it is expressly agreed between the parties that the notice of default provided in paragraph 9 of said June 1937 agreement becomes immediately operative in the same manner and to the same extent as though the same were personally served and received by said Middleton.

" 'If Middleton fully and faithfully complies with all the terms and conditions hereof and on the precise dates herein agreed upon, then he shall be relieved of the automatic notice of default provision herein provided for.

" 'It is understood that certain engineering expenses and costs of litigation, etc. may be incurred in the determination of the damage done to the property by reason of the state highway built across the same. Middleton agrees to personally pay all expenses incurred by reason thereof and in the event that Krobitzsch retakes the said property and cancels all agreements by virtue of any default of Middleton, then Middleton agrees to pay for all such legal, engineering and other expenses which may have been incurred to the time of said taking over . . .

" 'All moneys received from the State of California, Joint Highway District or any County arising out of the road now or hereafter to be built, whether for damages or otherwise, shall be paid to Krobitzsch and applied on the last amounts due in point of time by Middleton under the original agreement . . .'

"Later, on June 4, 1940, the parties entered into 'Supplemental Agreement (#2).' After referring to the previous agreements and stating that there is due from G. Quilicy (a tenant mentioned in the original agreement) $650 as rental, it provides:

" 'WHEREAS, it is the desire of the parties hereto that such rentals be delivered to the parties of the first part without in any manner affecting the status between the parties hereto, except as a reduction in the amount due from second party to first parties;

" 'Now THEREFORE, in consideration of the premises and as an additional consideration for the execution of the Supplemental Agreement dated February 15, 1940, the said parties agree that the first parties hereto may collect and receipt for the rentals aforesaid; and that the acceptance thereof shall not operate nor be deemed to waive any breach of any covenant or covenants by said second party to be done or performed in any of his agreements relating to the aforesaid property and in particular, that Supplemental Agreement between the same parties hereto dated February 15, 1940; nor shall the same operate nor be deemed nor considered as a release, estoppel nor waive any default or defaults on the part of the second party, it being distinctly understood that the sole and only effect of the receipt by the first parties of

the aforesaid rentals shall be to reduce the amount due from second party to first parties and in no manner to release second party of any of his obligations to first parties, nor to affect in any particular the rights of the first parties, except as to the remaining balance due, as hereinbefore set forth.'

"Prior to July 6, 1937, Middleton paid the $4,500 as provided in the agreement, and thereafter paid several installments, the last one on April 5, 1939. In addition he was entitled to credit for certain rentals mentioned in the agreements. In all, his payments and credits amounted to $19,525.

"On December 15, 1939, plaintiff applied for and was granted the right to take immediate possession of the proposed right of way. Just when the state actually entered into possession is in dispute, but as pointed out hereafter, that question becomes unimportant.

"On August 5, 1941, the Krobitzschs notified Middleton that for failing to comply with the terms of the agreements of June 6, 1937, and February 15, 1940, they declared the contract null and void and all his rights terminated. On July 14, 1942, the Krobitzschs commenced an action in the Superior Court of San Mateo County against Middleton to quiet title to the property. In that action Middleton contended that he was not in default. The trial court found adversely to him and quieted title in the Krobitzschs. On appeal to this court, the decree was affirmed. (*Krobitzsch* v. *Middleton,* 72 Cal.App.2d 804 [165 P.2d 729].)

"The primary question here is the nature and extent of Middleton's interest in the property at the time of the taking by the state. If the agreements here constituted merely an option to purchase, then the exact date of the taking by the state becomes unimportant, as 'The holder of an option to purchase land being condemned has no interest in the land which will entitle him to compensation . . .' (29 C.J.S. 1101; *East Bay Mun. Utility Dist.* v. *Kieffer,* 99 Cal.App. 240 [278 P. 476, 279 P. 178].) If, however, the agreement constituted in law an agreement of sale and purchase, Middleton became the equitable owner of the property, and the question of whether the 'taking' occurred before he had legally forfeited his right to the property becomes highly important.

## "OPTION OR AGREEMENT OF SALE?

"The test of whether an instrument is an option or a contract of sale is whether there is such an obligation on the part of the holder to buy that it can be enforced by specific

performance. In 6 California Jurisprudence, page 49, it is said that an option '. . . is a contract to keep the offer open. The test determinative of the question whether a given agreement relating to the sale and purchase of land is an agreement to purchase and sell the property or a mere option to purchase, is: Is the agreement capable of specific performance?' 'The nature of a contract as an option or obligation to purchase is to be determined not by the name which the parties have given it, but by the nature of the obligations which it imposes. The distinguishing characteristic of an option contract is that it imposes no binding obligation upon the person holding the option; and where there is not merely the right but the obligation to buy, the contract is not one of option, but of sale.' (12 Am.Jur. 525-6.) 'If an instrument contains a direct agreement to buy it is a contract rather than a mere option, although it . . . provides that if the optionee fails to consummate the agreement his deposit shall be forfeited, or that in case of breach by the optionee the optionor may re-enter and treat all payments made as compensation for use of the premises, *unless it also provides that the optionee shall be relieved from any further liability.*' (25 Cal.Jur. 508-9; emphasis added.)

"As said in *Asia Investment Co.* v. *Levin,* 118 Wash. 620 [204 P. 808, 32 A.L.R. 578]: 'It is difficult to lay down a hard and fast rule which will properly classify a given contract. But the law seems to be that, although the contract does not expressly provide that the vendee agrees to consummate the sale by paying the balance and accepting the deed, yet, where it appears that the general intention was to consummate a sale, the absence of an express agreement does not limit the contract merely to one of option, but that it will be held to be a contract of purchase and sale. . . . Or, stated in the language of the decisions, where the stipulation in regard to liquidated damages is to be regarded as security for the performance of the contract by the vendee, then specific performance may be had by the vendor, but where the stipulation was intended as a substitute for performance—where the vendee might comply with the contract or pay liquidated damages in lieu thereof—then specific performance is not available.' (32 A.L.R. pp. 581, 583.) 'Though the intention of the parties to create, on the one hand, an alternative or substitutionary obligation, which will preclude enforcement of specific performance of the main obligation, or, on the other hand, to provide a security for the performance of the main

obligation, which will not preclude such relief, does not depend solely upon the phraseology of the provision in respect of payment or forfeiture, but is to be determined in view of the contract as a whole and in the light of surrounding circumstances, nevertheless that phraseology is important in ascertaining intention; and serves to illustrate the practical application of the rule and criterion above stated; and for that reason has been indicated in the two following subdivisions.' (32 A.L.R. pp. 599, 600.) (See also 87 A.L.R. 564.)

"The test, then, as to whether a particular instrument is an option or an agreement of sale is whether the second party is bound to perform so that specific performance will lie, in the event he refuses so to do, and that question is to be determined, not from the name given the instrument, but from the intention of the parties as evidenced by its terms and the circumstances. With that test in mind, we will examine the three instruments in question here. It becomes apparent at once throughout them that a studious effort was made to avoid committing Middleton to any promise to pay any portion of the purchase price. While the first instrument gives him the 'option to purchase on or before July 6, 1937,' it nowhere binds him to make any further payments in case he makes the $4,500 payment on or before that date. Not only does the agreement provide that in the event of default, the seller's remedy is to declare it void and keep all moneys paid, but it goes further and provides that they 'shall have no right or claim against second party.'

"Then the first supplemental agreement shows even more clearly that Middleton was still not binding himself in any way to pay the purchase price. Middleton is now in default under the first agreement, having failed to continue to make payments thereon. In order that the sellers will not foreclose his rights, this agreement provides that certain taxes 'shall be paid' by him—(not that he will pay them)—by a certain date. If they are paid, Middleton's time to make the then due payments on the purchase price will be extended. A significant feature of this agreement is that Middleton does agree to one thing—he agrees to pay personally all expenses, legal, engineering, costs of litigation, etc., in the determination of the damage done by the state highway, even though the first parties terminate and cancel all agreements because of Middleton's default. This is the only place in the three agreements where Middleton agrees to pay anything. The situation is a complete answer to Middleton's claim that the first agree-

ment was an option up to the time Middleton paid the $4,500, and from there on it became an agreement of sale under which he could have been compelled to continue paying the balance of the purchase price. The conduct of the parties and the express terms of the agreements show that at no time was Middleton bound to continue on with the purchase of the property. He could quit at any time without any liability, other than the loss of the moneys theretofore paid in. There never was, and by the express terms of the contract, even up to the time when the last payment should be made, could there be, a time when the Krobitzschs could have forced Middleton to continue with the purchase, or could have brought specific performance; and as said in *Compton Land Co.* v. *Vaughan,* 33 Cal.App. 130 [164 P. 610], without the right to compel the purchaser to purchase the property, 'then, as there was no mutuality of remedy, the contract is at once given the impression of being an option merely, the benefits of which Vaughan [the purchaser] might or might not, at his election, take advantage of.' (P. 134.)

"A situation similar to the one in our case is found in *Bradford* v. *Sunset Land etc. Co.,* 30 Cal.App. 87 [157 P. 20]. There the question was whether the instrument was an option or agreement of purchase. It acknowledged receipt from Bradford of the sum of $500 as part payment of the purchase price of certain real property. 'Said property having this day been sold to said S. P. Bradford for the sum of forty-five thousand seven hundred and fifty dollars ($45,750) ;' the balance being payable $500 on or before May 1, $500 on or before June 1, and $44,250 on or before August 1. It then provided that if the buyer failed to make any payment as specified, the agreement would terminate, the seller would be freed from all obligations thereunder, 'and the seller may retain all sums theretofore paid hereon, the same being fixed as the consideration and *in full compensation* for the option hereby granted . . .' (Emphasis added.) Bradford, in addition to the deposit, paid the $500 due May 1 and June 1 respectively, making a total payment of $1,500. He did not pay the balance due August 1. He then sued the seller for a return of the $1,500, contending that as the seller was a corporation the attempted sale to him was void under the then section 361a of the Civil Code, because the stockholders of the corporation had not consented to the sale. The court held that the instrument was an option to purchase and not a sale, and until Bradford paid, or offered to pay, the full

purchase price, he could not complain of the failure of the corporation to get the consent of its stockholders.

"In *California Land Security Co.* v. *Ritchie,* 40 Cal.App. 246 [180 P. 625], the contract stated that the buyer 'agrees to purchase' certain real property, and that if he 'refuses to complete and carry out this contract,' the moneys paid by him were to be forfeited and belong to the sellers as liquidated damages and the contract would become null and void. The court held this to be an option and not an agreement of sale.

" 'The test determinative of the question whether the said agreement, containing as it does the foregoing covenant, is an agreement to purchase and sell the property described therein or a mere option to purchase the same is: Is said agreement capable of specific enforcement?

" 'There are two classes of contracts for the conveyance of lands, in which penalties are annexed for the breach of the covenants thereof, and in one of which classes specific performance will be decreed and in the other denied, viz.:

" '1. Where the contract contains a stipulation for the payment of sums of money, called penalties or liquidated damages, the sole purpose of which stipulation is to secure the performance of the contract or the acts specified therein to be performed. . . .

" '2. Where there is inserted in the contract a covenant or stipulation that the party who is to perform the contract may at his election do one of two things—that is, where the stipulation is that the proposed purchaser may either consummate the purchase or, in default thereof, pay to the seller a certain specified sum as liquidated damages for the breach or the failure to purchase—in which case the agreement is to be construed as a mere option whose terms are incapable of specific enforcement.' (Pp. 255-6.)

"Middleton contends that the fact that he was to be permitted to have possession of the property changes the instrument from an option to an agreement of sale. This contention is answered in *Johnson* v. *Clark,* 174 Cal. 582, at page 586 [163 P. 1004], where the court said: 'Plaintiff contends, first, that the agreement between himself and Clark was more than a mere option for the purchase of these mining claims, but that even if it was not, the subsequent acts of Clark and Grant in entering into possession of the property with the consent of plaintiff and working it, constituted an acceptance which changed the optional contract into a contract of sale between plaintiff and Clark subject to specific performace

474

as such. But it is quite clear that under any fair consideration of the terms of the agreement between plaintiff and Clark it was simply an optional agreement. When by the terms of an agreement the owner of property binds himself to sell on specified terms, and leaves it discretionary with the other party to the contract whether he will or will not buy, it constitutes simply an optional contract. This was all the contract involved here amounted to.'

"*Los Angeles County Flood Control District* v. *Andrews,* 52 Cal.App. 788 [205 P. 1085], like our case, was one in condemnation. There, as here, the optionee claimed that he was the equitable owner of the land sought to be condemned, because of a contract which he contended was not an option but an agreement of sale. The court held it to be merely an option, because there, as here, 'he covenanted to do nothing.' (P. 791.) Although in that case there were no installment payments to be made, as there were here, that distinction is of no importance.

"Another California case holding that an agreement in which the first parties agreed to sell and convey certain real property to the second party, and providing that on default the payments made thereunder should be forfeited, constituted an option and not an agreement of sale, is *Beckwith-Anderson Land Co.* v. *Allison,* 26 Cal.App. 473 [147 P. 482].

"Middleton emphasizes seven provisions of the contract, which he contends are inconsistent with its being an option. They are: (1) the right of Middleton to take possession about November 1; (2) the fact that no interest is charged prior to July 6; (3) the commission to be paid Middleton after he has paid in approximately half of the purchase price; (4) the clause making the agreement 'binding upon the parties hereto, their heirs, successors and assigns;' (5) the fact that the words 'in default' are used; (6) the paragraph providing that the contract is subject to the Krobitzschs obtaining the consent of the deed of trust holders; and (7) the clause for liquidated damages. None of these is inconsistent with an option, and none of them obviates the clause that there shall be no right or claim of first parties against second party.

"The apparent studied effort to keep from committing Middleton to pay any portion of the purchase price and the provision that he, as buyer, was to receive a commission, make the agreement somewhat unusual. Perhaps these are explained by the fact that Middleton was not acting for himself, but for his principal, the Ocean Shore Railroad. Appar-

ently he did not want to be bound to take the property at any stage of the proceedings, unless the railroad wanted it.

"The cases cited by Middleton do not contradict the rule that the type of contract here, because there is no personal liability under it, cannot be specifically enforced, and that the test of an option or an agreement of sale lies mainly in the question of whether the contract can be specifically performed against the buyer.

"*Wells* v. *Flynn*, 191 Iowa 1322 [184 N.W. 389, 17 A.L.R. 710], actually confirms the fact that specific performance would not lie as against Middleton, for although there was a provision in the contract under consideration there, that the seller, in case of default, could bring an action against the buyer for the amount due, the court held that such right was 'carefully guarded by adding thereto the words, "but only to the extent to which the secured parties are personally liable under this contract," ' and reversed a judgment in favor of the seller.

"In the cases mentioned in 3 American Law Reports, pages 585 et seq., referred to in Middleton's brief, which held that an agreement may be considered one of sale rather than of option which provides that in case of default the contract shall terminate and be void, there were additional circumstances. Thus in *Cross* v. *Snakenberg*, 126 Iowa 636 [102 N.W. 598], the buyer 'executed the notes for the purchase money, and it was evident that the parties intended the contract to be binding on both.' (3 A.L.R. 585.) In *Williams* v. *Osage County*, 84 Kan. 508 [114 P. 858, 34 L.R.A.N.S. 1221] the court said that the second party, under the terms of the agreement, became 'inferentially liable.' (3 A.L.R. 585.) In *Wright* v. *Suydem*, 72 Wash. 587 [131 P. 239], the court found that there was a definite agreement on the part of the buyer to buy, which modified the provision that in the event of default the deposit should be retained as liquidated damages.

"*Karr* v. *Stevens* (Tex.Civ.App.), 297 S.W. 287, is easily distinguished from the case at bar. The agreement there provided: 'Second parties agree to purchase.' There is no such provision in our case. Middleton cites many cases such as *Cushing* v. *Levi*, 117 Cal.App. 94 [3 P.2d 958], and *Flickinger* v. *Heck*, 187 Cal. 111 [200 P. 1045], to the effect that once the option is exercised and the purchaser agrees to purchase, the agreement becomes one of sale, and is no longer an

option. There can be no quarrel with this principle of law. It is not applicable here, for, as pointed out before, this was a continuing option.

"*Brickell* v. *Atlas Assurance Co. Ltd.*, 10 Cal.App. 17 [101 P. 16], is not in point, for there not only did the buyer agree to buy, but the agreement provided that in the event of default the seller was to retain the part of the purchase price already paid, or 'to bring an action to enforce payment of the remainder of the purchase price.' (P. 20.) *McHenry* v. *Mitchell*, 219 Pa. 297 [68 A. 729], cited by Middleton, confirms our construction of the contract here. In that case, the court pointed out that the buyer had agreed to pay a certain sum per acre for certain coal lands. It then said: 'If the parties had stopped after these covenants had been agreed upon, there could be no doubt that their agreement would be construed to be an absolute contract to convey, binding on both parties. They, however, did not stop here, nor was it their intention to do so, because the clause which follows these covenants clearly shows that neither party considered it an absolute conveyance at that time. This clause provided ''that, in case payment is not made as hereinbefore stipulated, then this agreement to be null and void and of no effect whatever, and all parties hereto to be released from all liability hereunder.'' When the parties wrote that clause into their agreement, they intended, and thus declared it to be their intention, that the instrument should be considered an option to purchase, and not a binding contract of sale.'

"In *Harris* v. *Seattle Land & Imp. Co.*, 122 Wash. 323 [211 P. 282, 214 P. 1066] not only did the buyer expressly 'accept all of the provisions, terms and conditions' set forth in the contract, but, while it provided in case of default for the payments made by the buyer thereunder to be forfeited to the seller, it did not provide, as in our case, that that was to be the exclusive remedy of the seller.

"In *Marquez* v. *Cave*, 134 Kan. 374 [5 P.2d 1081], the contract is not set forth. However, in holding it to be an agreement of sale rather than an option, the court said that while it was headed 'Option Agreement' and contained 'many words and phrases suitable or common in pure option agreements, . . . these do not destroy the obvious purpose and nature of the contract' and that these expressions were 'foreign to the real purpose of the parties.' In *Ditzen* v. *Given*, 139 Kan. 506 [32 P.2d 448], the agreement contained a

promise to pay. The court held that it was plainly an agreement of sale although 'The contract is clearly an attempt to so confuse the language used in an instrument that it will appear to be something other than what it is.' (P. 449 [32 P.2d.])

"Reference is made to testimony in the case of *Krobitzsch* v. *Middleton, supra* (72 Cal.App.2d 804) wherein a witness testified that Krobitzsch stated to him that he had told the chief highway engineer that Middleton had entered into a binding agreement with him, Krobitzsch. The fact that Krobitzsch thought the agreement was binding on Middleton (if that is what he meant, rather than that it was binding on himself) would not have helped, had Krobitzsch tried specifically to enforce the agreement. The question as to when the state actually entered on the property, and other questions raised on this appeal, become immaterial in view of our holding that Middleton held only an option on the property. He held no interest therein which survived the quiet title action of *Krobitzsch* v. *Middleton, supra,* and thus is not entitled to participate in the award in this proceeding."

The rehearing was granted because of the strenuous contention of Middleton that the question of option or agreement of purchase and sale was not raised in the court below, and that the case was tried on the theory that the agreement was one of purchase. An examination of the record discloses that these claims were raised for the first time in the petition for rehearing.

In the transcript in the first Krobitzsch case there is no discussion or mention of this question. In the record in our case, the only mention is a statement at the beginning of the trial by counsel for the Krobitzschs, which, under the circumstances of the case, is equally consistent with a claim that the agreement in question was a unilateral one as with one that it was a bilateral agreement. Krobitzschs' counsel filed in this court an affidavit which shows that in his brief in the lower court, Point V made the contention that the agreement was an option. Middleton concedes that he presented his position on the subject in his reply brief. Krobitzschs' counsel then in a letter to the trial judge argued the matter further. Thereafter, Krobitzschs' counsel asked the trial court to adopt a certain finding on the ground that the agreement was nothing but an option. Middleton resisted this request. The court did not find on this question. It merely found that Krobitzsch

and Middleton had entered into an agreement which "gave to said defendant George Middleton the right to purchase" the property. In Middleton's opening brief in this court, Middleton took over two pages to contend that "the exact title of the vendee at any time during the life of the contract was not an issue" in the Krobitzsch decision, quoting from the portion where the opinion states that it was not necessary to determine whether the agreement was an option or an agreement of sale, and hence it was not res judicata in this case. Again, in Middleton's closing brief, he stated that there was nothing in the pleadings in the Krobitzsch case which put in issue the character of Middleton's title at the time of the taking by the state, that the judgment in that case cannot be held to be an adjudication of Middleton's title at that time, and that the only matter in issue was the validity of the agreement and the questions concerning the notices of default. He even stated that had the court determined the extent and character of Middleton's title, such determination would not be binding upon the parties, as it was not an issue. He again referred to the contention in his opening brief that the District Court of Appeal refused to pass upon the question important here. He is now contending that the court did pass on it, and that our decision is contrary to the decision in the Krobitzsch case on the same point.

At the oral argument counsel admitted that at no time before this court until the petition for rehearing was it contended that the case was tried on the theory that the agreement was one of purchase, and that, in fact, at all times it was agreed that the nature of the agreement was one of the basic points at issue. Also he contended that the pleadings in our case admit the agreement to be one of purchase and sale. This contention is based on the fact that in the answer to plaintiff's complaint Middleton alleged that he held an agreement of purchase, which allegation he contends Krobitzschs did not deny. However, the Krobitzschs filed a separate answer to the complaint, and we know of no requirement that defendants answering separately must formally deny matter set up in the other defendant's answer to the complaint. Moreover, Krobitzschs' counsel assert that no service of the Middleton answer was made on the Krobitzschs or their counsel.

As this matter was an issue in the lower court, even though, as Middleton contends, presented belatedly, after the evidence was in, we see no good reason for complying with his

request and sending the case back to the trial court for evidence concerning the character of the agreement, nor do we see any good reason for changing our previous opinion in this matter.

The petition to make additional findings is denied, and the judgment is affirmed.

Peters, P. J., and Ward, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied May 5, 1949.