MOHR PARK MANOR, INC., a Nevada Corporation, and JAMES H. McGROARTY, Appellants, v. ANNA MOHR, Respondent.

No. 5137

February 21, 1967 · 424 P.2d 101

*Singleton, DeLanoy & Jemison,* of Las Vegas, for Appellants.

*Coulthard & Smith,* of Las Vegas, for Respondent.

# OPINION

By the Court, WILKES, D. J.:

This is an appeal from a declaratory judgment annulling an option agreement. Anna Mohr, plaintiff, filed a complaint seeking a declaratory judgment on November 1, 1962. Mohr Park Manor, Inc., and James H. McGroarty, defendants, answered and thereafter trial was held before the court. Judgment was entered annulling the agreement on May 9, 1966. Appeal was commenced on May 23, 1966, by Mohr Park Manor, Inc., and James H. McGroarty, the appellants. We believe that the trial court erred and therefore reverse the judgment and remand for further proceedings.

In late 1961 Mrs. Mohr and a friend contacted McGroarty at his office in Las Vegas in an effort to sell him her 150 acre tract in that city. Several meetings followed wherein the development of the tract as a senior citizens project was discussed. Contemplating the acquisition of the property McGroarty caused defendant Mohr Park Manor, Inc., to be incorporated in February of 1962.

On March 2, 1962, the parties executed the following instrument:

AGREEMENT

THIS AGREEMENT, made and entered into this 2nd day of March, 1962, by and between ANNA MOHR, a widow, hereinafter referred to as Seller, and MOHR PARK MANOR, INC., a Nevada corporation, hereinafter referred to as Buyer,

WITNESSETH:

Whereas, Seller is the owner of a parcel of land consisting of approximately 150 acres of land situated in the County of Clark, State of Nevada, and more particularly described as follows: * * *

Whereas, Seller is desirous of selling said property described above to Buyer and Buyer wishes to purchase said property.

Now, Therefore, for and in consideration of the payment of $10.00 paid by Buyer to Seller, receipt of which is hereby acknowledged, together with the mutual promises

and agreements hereinafter made between the parties hereto, it is agreed as follows:

1. The Seller hereby agrees to release and convey to Buyer, parcels of land not less than 20 acres[1] at any one time upon request being made by Buyer to Seller to release said parcels of land from the real property described herein as the real property the subject of this agreement.

2. It is expressly understood and agreed between the parties hereto that it will be necessary for Buyer herein to finance the contemplated construction upon said real property and to do so it will be necessary for Buyer to have a clear title to such parcels released to Buyer, Buyer, however, hereby agrees that Buyer will, as soon as financing has been obtained, cause an escrow to be set up in regard to the sale of the released parcels, said escrow to provide that Seller herein shall be paid the sum of $3,000.00 per acre for each acre of land released and conveyed out of said escrow before any profits can be distributed to Buyer.

3. Buyer further agrees to furnish to Seller a promissory note in an amount equal to $3,000.00 for each acre of land released and deeded to Buyer. Said promissory note to be placed into the escrow to be established as aforesaid, with instructions to the escrow agent that said promissory note is to be surrendered to Buyer and marked paid when the amount of money due thereon shall have been paid to Seller.

4. It being further expressly understood and agreed between the parties hereto that the sales price of the real property hereinabove described is the sum of $3,000.00 per acre and that the Buyer is granted by this instrument the irrevocable right to buy all of the real property described above for that price,[2]

---

[1]Deleted at this place in the instrument were the words "and not to exceed 40 acres." This deletion was initialed by both both parties.

[2]At this point, the parties deleted the following: "it being further understood and agreed, however, that in the event Buyer has not exercised the right to buy all of said property within a period of five (5) years from the date hereof, the Seller herein shall be released from the obligation of selling the remaining balance of land to the Buyer. It is understood that the Buyer herein is only obligated to purchase such portions of said described real property as Buyer desires to purchase, and Buyer shall also have the right to determine which parcels it will purchase in what order."

The contemporaneous nature of this deletion is evidenced by the parties failing to replace the now inapplicable comma after "price" with a period. This deletion was also initialed by both parties.

IN WITNESS WHEREOF, the parties hereto have hereunto set their hands and seals the day and year first above written.

This instrument was drafted by an attorney not presently involved in this case. The parties hold different views as to whether the attorney prepared the instrument for Mrs. Mohr or for both parties. The trial court adopted a finding that the instrument was drafted on behalf of both parties. We must conclude that Mrs. Mohr was represented by counsel in the preparation of this instrument.

After the execution of the instrument and between April and December 1962 appellants expended approximately $8,000.00 for engineering. McGroarty attended planning commission meetings and met with various persons regarding the obtaining of financing, architectural work, engineering, zoning, etc. The record is clear that both money and effort were expended by appellants in furtherance of the development of the property. Mrs. Mohr was aware of these expenditures and efforts and for a time at least was satisfied with the plans and progress.

In June of 1962 Mrs. Mohr demanded a quitclaim deed from appellants which demand was not met. On November 1, 1963, she filed this suit.

Respondent contends that no valid option or contract was created by the March 2, 1962, instrument because it is lacking in essential elements; that it is both uncertain and vague; that the instrument is unenforceable for lack of mutuality of obligation and consideration; that, if an option, it was not exercised timely or in accordance with its terms. Appellants contend that a valid and binding option was entered into between the parties; that the option is reasonably certain and definite and will support specific performance; that the option was repudiated by Mrs. Mohr prior to the expiration of the option period.

The trial court held the instrument of March 2, 1962, to be a total legal nullity, a nudum pactum, for the reason that it does not specify any time for its acceptance, or any contingency upon the happening of which it could be exercised as an option.

To be decided by this court is whether the instrument constituted a binding, legally enforceable option. We hold that an option does exist and remand for a determination of the period of its validity—a reasonable time under the circumstances.

An option to purchase property is a contract wherein the owner, in return for valuable consideration, agrees with another person that the latter may buy property within a specified time upon expressed terms and conditions. McFerran v. Heroux,

269 P.2d 815, 819 (Wash. 1954); Bowles v. Babcock & Wilcox Co., 76 S.E.2d 703, 704 (Ga. 1953). The option contract is distinct from the contract which is the underlying agreement and it must stand or fall on its own merits. Simpson, Contracts § 20 (1954); Restatement, Contracts § 24 (1932). This distinction is seen in Neely v. Denton, 68 So.2d 537, 540 (Ala. 1953) wherein it is stated: "An option in its inception, 'is neither a sale nor an agreement to sell. It is simply a contract by which the owner of property agrees with another, that he shall have the right to buy the property at a fixed price within a time certain.' [Citation omitted.]" See also Auslen v. Johnson, 257 P.2d 664 (Calif. Dist. Ct. of App. 1953).

In interpreting an agreement a court may not modify it or create a new or different one. A court is not at liberty to revise an agreement while professing to construe it. Reno Club, Inc. v. Young Investment Co., 64 Nev. 312, 323–24; 182 P.2d 1011 (1947). On the other hand, a contract should be construed, if logically and legally permissible, so as to effectuate valid contractual relations, rather than in a manner which would render the agreement invalid, or render performance impossible. Reno Club, Inc. v. Young Investment Co., supra, 325. See also 4 Williston, Contracts § 620 (3d Ed. 1961) wherein it is stated: "The Writing Will Be Interpreted If Possible So That It Shall Be Effective and Reasonable. An interpretation which makes the contract or agreement lawful will be preferred over one which would make it unlawful; an interpretation which renders the contract or agreement valid and its performance possible will be preferred to one which makes it void or its performance impossible or meaningless; an interpretation which makes the contract or agreement fair and reasonable will be preferred to one which leads to harsh or unreasonable results." A court should ascertain the intention of the parties from the language employed as applied to the subject matter in view of the surrounding circumstances.

It is contended that the agreement lacks consideration. We find this contention to be without merit. Corbin cites three ways in which a unilateral option contract can be made irrevocable: 1) By the giving of a written promise under seal; 2) by the giving of consideration; 3) by the subsequent action in reasonable reliance thereon. Corbin, Contracts § 263 (1963). Though any

one is adequate, all three appear to have occurred in the instant case.

It would appear that the bilateral contract which arises upon exercise of the option is also supported by consideration. The buyer is to pay $3,000.00 per acre for the land. It is unnecessary, however, for this court to consider the merits of the underlying agreement; that question is not before us today. As noted above, we are solely concerned with the validity of the option agreement.

■■■■■■■■

Respondent contends that the agreement lacks "mutuality of obligation" (sometimes referred to as "want of consideration"). This assertion misconstrues the very nature of an option contract which does not require mutuality of obligation. Witkin, Summary of California Law, *Contracts* § 74. An option so long as it remains unaccepted, is a unilateral writing lacking mutual elements of a contract, but when accepted by optionee, an executory contract, which is mutually binding on the parties, arises. Crane-Rankin Development Co. v. Duke, 90 P.2d 883 (Okla. 1939); Davenport v. Doyle Petroleum Corporation, 126 P.2d 57, 61 (Okla. 1942).

We now turn to what we regard as the main issue to be decided. Respondent contends that the option is invalid because of uncertainty and indefiniteness as to time. The trial court held that the failure to specify a time within which the "option" could be exercised rendered the instrument a nullity, a nudum pactum, saying "The crux of the instant case is that no valid option agreement ever was executed—the agreement of March 2, 1962, being a total nullity."

Respondents and the trial court placed great stress upon a statement in C.J.S.: "An option for an indefinite term is a nudum pactum." 91 C.J.S., *Vendor and Purchaser* § 6 (1955). This statement first appeared in Corpus Juris and was later adopted and included in C.J.S., relying on Bristo v. Christine Oil & Gas Co., 71 So. 521 (La. 1916). Close examination will reveal that the Bristo case involved a perpetual lease for mineral rights and that the option was invalidated for two reasons: 1) Under a Louisiana statute which provides that the price of a sale must not be out of proportion with the value of the thing sold there was failure of consideration; and, 2) the purported extension for an unlimited time was violative of the rule against perpetuities. We feel that the statements in C.J.S. and the holding in the Bristo case are not in point in this case for the reason

■■■

that there they were concerned with an option for an *unlimited*[1] time whereas in this case we are concerned with an option for an *indefinite* but limited time.[2] According to the language of the agreement, that time was "as soon as financing has been obtained."

An option actually intended by the parties to run for an unlimited time (i.e., forever) is void. A court cannot save such an option by implying a reasonable time because such an interpretation would be exactly contrary to the intention of the parties. However an option which is to remain open for a limited time but in which no time is stated is valid because the law will imply a *reasonable* time for its duration. Restatements, Contracts § 46 (1932).

This principle and general philosophy are illustrated by Shull v. Sexton, 390 P.2d 313, 316 (Colo. 1964) where the court states:

> "Although a contract may be uncertain or incomplete in some respects, its specific performance may nevertheless be decreed where the uncertainty or incompleteness relates to matters which the law makes certain or complete by presumption, rule, or custom and usage. [See also authorities cited therein.] * * * But the Shulls point out that the contract thus created lacks any provision for the time of performance. Courts have applied the doctrine of performance within a reasonable time where the contract fails to specify the time for the discharge of obligations. [Citations omitted.] * * * Reasonable time is measured by the circumstances of the case." [Citation omitted.]

Although the instrument of March 2, 1962, is no pearl of draftsmanship, we do not subscribe to the position that the court is being asked to rewrite the contract for the parties. Where possible, the court must supply those things which it is bound under the law to imply in order to carry out the intent of the parties so as to make the agreement lawful, effective and reasonable. That the parties have burdened the court with the

---

[1] This is close to the term "unlimited option" used by Prof. Corbin in his article "The Effect of Options on Consideration", 34 Yale L.J. 571 (1925). There the unlimited option situation was treated as an illusory promise.

[2] To the extent that the broad language quoted from C.J.S. above is, or seems to be, inconsistent with the holding in this case, we deem its authority as unpersuasive.

necessity of establishing by law what is a reasonable time under the circumstances is true; however, this is a duty which the court cannot ignore.

As we have determined that the trial court was in error in finding the option to be a nullity, this case must be remanded for the factual determination of what is a reasonable time within which the option may be exercised in the context of this case.

Reversed.

THOMPSON, C. J., and COLLINS, J., concur.