Melvin KUHFELD, Alice Jean Kuhfeld, Ervin Kuhfeld and Kay Kuhfeld, Plaintiffs and Appellees,

v.

Edward KUHFELD, Defendant and Appellant.

No. 12901.

Supreme Court of South Dakota.

Argued March 19, 1980.

Decided May 14, 1980.

---

Thomas M. Tobin, Maynes, Tonner, Maynes & Tobin, Aberdeen, for plaintiffs and appellees.

Thomas E. Klinkel and Chester A. Groseclose, Jr., Richardson, Groseclose, Kornmann & Wyly, Aberdeen, for defendant and appellant.

FOSHEIM, Justice.

This action involves the validity of an option agreement which ended with motions for summary judgment from all parties. The trial court granted summary judgment for appellees and denied the appellant's motion. Both rulings are appealed. We reverse and remand.

Melvin, Ervin, and Edward Kuhfeld inherited 240 acres of land as tenants in common from their father, Herman A. Kuhfeld. On September 19, 1967, the day following entry of the decree of distribution in the estate, these instruments were executed: (1) A warranty deed from Melvin Kuhfeld and his wife Alice Jean Kuhfeld to Edward Kuhfeld granting him an undivided one-third interest in part of the inherited land; (2) a warranty deed from Ervin Kuhfeld and his wife Kay Kuhfeld to Edward Kuhfeld of an undivided one-third interest in the same real property; and (3) an option agreement, which is the subject of this lawsuit, signed by all four appellees granting an irrevocable option to Edward Kuhfeld to purchase the remainder of the land distributed.

The above documents represented a package agreement. Two parcels of approximately 80 acres each were the subject of the option agreement which provided that it "was exercisable at any time hereafter, and shall remain in full force and effect until exercised by the said Edward Kuhfeld." The document further stipulated that it "is agreed and understood by the undersigned that this option shall extend to and be binding upon each of the parties to this option and to their heirs, personal representatives, successors and assignees."

The appellees registered no objection to the option until January of 1979, following the defendant's marriage and serious illness. Appellees then sought to have the option declared void. In March of 1979, however, the appellant gave notice of his intention to exercise the option and tendered performance. The appellees refused to perform and the appellant sought specific performance. The trial court concluded that the grantors intended to make the option exercisable forever and accordingly declared the option void.

The first issue is whether the option agreement was void for want of definiteness with respect to time of performance. Appellant contends that the option agreement shows an intent to grant an option exercisable by the optionee only during his lifetime.

Although an option to purchase real estate is initially unilateral in nature, upon timely acceptance it becomes a mutually binding contract capable of enforcement and subject to the same rules as a bilateral contract. *Renner v. Crisman*, 80 S.D. 532, 127 N.W.2d 717 (1964). In a case involving a written contract for the purchase of land, the intention of the parties is generally to be gathered from the written provisions. *Vaughn v. Rosencrance*, 73 S.D. 36, 38 N.W.2d 822 (1949). The question thus distills to a review of the document to ascertain the time period.

It is essential to the validity of any contract, including an option agreement, that a definite time for performance either be stated in the contract or be ascertainable from the contract's express or implied provisions. Annot. 31 A.L.R.3d 522 (1970). An option to purchase real property may be defined as a contract by which an owner of real property agrees with another person that the latter shall have the privilege of buying the property at a specified price within a specified time, or within a reasonable time in the future, and which imposes no obligation to purchase upon the person to whom it is given. *Bratt v. Peterson*, 31 Wis.2d 447, 143 N.W.2d 538 (1966); *Phillips Petroleum Co. v. City of Omaha*, 171 Neb. 457, 106 N.W.2d 727, 85 A.L.R.2d 570 (1960); *Whitworth v. Enitai Lumber Co.*, 36 Wash.2d 767, 220 P.2d 328 (1950); 77 Am.Jur.2d Vendor and Purchaser, § 27 (1975). An option which is intended by its parties to run for an unlimited time is void; however, an option which is to remain open for a limited time, but in which no time is stated, is valid. *Mohr Park Manor, Inc. v. Mohr*, 83 Nev. 107, 424 P.2d 101, 31 A.L.

R.3d 513 (1967); *Fleischman v. Zimmermann*, 258 Wis. 194, 45 N.W.2d 616 (1951); 77 Am.Jur.2d Vendor and Purchaser § 32 (1975). ·

■■■■ There is a strong tendency to construe an option or preemption right to be limited to the lives of the parties, unless there is clear evidence of a contrary intent. *Waterstradt v. Snyder*, 37 Mich.App. 400, 194 N.W.2d 389 (1971); *Old Mission Peninsula School District v. French*, 362 Mich. 546, 107 N.W.2d 758 (1961). The provision in the option agreement that it shall remain in full force and effect until exercised by Edward Kuhfeld indicates a personal right which would terminate upon his death. Words which fix an ascertainable fact or event, by which the term of a contract's duration can be determined, make the contract definite and certain in that particular. Instruments for the payment of money which postpone payment until after death are not regarded as void for uncertainty as to time of payment for the reason that, in law, that is certain which will be rendered certain, and the contingency of the death of the maker is an event certain to occur. See: 17 Am.Jur.2d Contracts § 80 (1964); Annot. 1 A.L.R.2d 1178, § 5 (1948). The word "until" is limiting in effect and communicates a termination point. As defined by Black's Law Dictionary (Rev. Fourth Ed.), "until" is a "word of limitation, used ordinarily to restrict that which precedes to what immediately follows it, and its office is to fix some point of time or some event upon the arrival or occurrence of which what precedes will cease to exist." In this case, that which precedes the word "until" is the option right which will cease to exist upon the certain occurrence of Edward Kuhfeld's death. This limitation, combined with the fact that the option right is personal to Edward Kuhfeld and no one else, indicates that the maximum time within which such right can be exercised is his life-time. We conclude that the· option to purchase will terminate on the death of the optionee and that the option therefore comes within the rule permitting it to remain open for a limited time even though no exact date is given. *Waterstradt v. Snyder*, supra; *Mohr Park Manor, Inc. v. Mohr*, supra. Having concluded that a time limit is specified for exercise of the option, we need not consider the further argument of appellant that where an option contains no time clause whatsoever, but which was not intended to remain open forever, the law will imply a reasonable time.

■■■■ We now turn to the concluding portion of the option agreement which provides that "it is agreed and understood by the undersigned that this option shall extend to and be binding upon each of the parties to this option and to their heirs, personal representatives, successors, and assignees." Appellant contends that this provision should not be interpreted as an extension of the option beyond the life of Edward Kuhfeld. The language under consideration refers to the "undersigned." The option agreement, because of its unilateral nature, did not require the signature of Edward Kuhfeld; * he was not an obligated party to the option when it was signed. A fair reading of this language indicates that the term "undersigned" means exactly what it says; that is, if any of those who signed the agreement assign their interest in the property or predecease Edward Kuhfeld, their heirs, personal representatives, successors, and assignees will carry out its terms if the optionee subsequently exercises the option. This interpretation satisfies the rule that a contract should be construed to effectuate valid contractual relations rather than in a manner which would render the agreement invalid or render performance impossible. *Trumbauer v. Rust*, 36 S.D. 301, 154 N.W. 801 (1915); *Sarles v. Sharlo*, 5 Dak. 100, 37 N.W. 748 (S.D.1888); *Cheatham v. Wilber*, 1 Dak. 335, 46 N.W. 580

---

* An agreement requires only the signature of the party to be charged with the performance of an obligation. SDCL 53–8–2; *McPherson v. Fargo*, 10 S.D. 611, 74 N.W. 1057 (1898). An option does not require mutuality of obligation until accepted by the optionee. *Mohr Park Manor, Inc. v. Mohr*, supra; *Davenport v. Doyle Petroleum Corp.*, 190 Okl. 548, 126 P.2d 57 (1942).

(S.D.1876); *Mohr Park Manor, Inc. v. Mohr*, *supra*; 4 Williston CONTRACTS § 620 (3rd Ed. 1961).

Finally, having determined that the trial court erroneously granted the appellees' motion for summary judgment, we further conclude that the trial court erred in denying appellant's motion for summary judgment. No material facts are in dispute. The option agreement is valid and binding as a matter of law. Therefore, it is proper to enter summary judgment in favor of the defendant. *Wilson v. Great Northern Railway*, 83 S.D. 207, 157 N.W.2d 19 (1968).

The case is remanded with directions to enter judgment accordingly.

All the Justices concur.